# EXHIBIT A

# KEURIG, INCORPORATED
# CONFIDENTIALITY AGREEMENT

In consideration of my employment or continued employment by Keurig, Incorporated, a Delaware corporation with its principal place of business in Wakefield, Massachusetts (the "Company"), and of the compensation to be paid to me, and in recognition of the fact that as an employee of the Company I will or may have access to confidential information, and for other good and valuable consideration, I agree with the Company as follows:

1. <u>Agreement Not to Compete with the Company or Solicit Employees or Customers of the Company</u>. As long as I am employed by the Company, I shall devote my full time and efforts to the Company and shall not participate, directly or indirectly, in any capacity, in any business or activity that is in competition with the Company.

    For a period of one year after the termination of my employment with the Company for any reason or for no reason, I shall not, directly or indirectly, whether on my own behalf, or as owner, manager, significant stockholder, consultant, director, officer, employee, or otherwise of any business entity, participate in the development or provision of goods or services which are similar to or competitive with good or services provided (or proposed to be provided) by the Company, without the express written authorization of the President of the Company.

    For a period of one year after the termination of my employment with the Company, for any reason or for no reason, I shall not solicit, induce, attempt to hire, or hire any employee of the Company (or any person who was employed by the company at any time during the last six months of my employment with the Company), or assist in such hiring by any other person or business entity, or encourage any such employee to terminate his or her employment with the Company.

    For a period of one (1) year after the termination of my employment with the Company for any reason or for no reason, I shall not, on behalf of myself or any other entity, compete for, or engage in the solicitation of, any customer or prospective customer (with respect to products or services competitive with the Company's products or services) that the Company has, during the one (1) year immediately preceding such termination of employment provided products or services to or solicited for the purpose of providing products or services.

2. <u>Unauthorized Disclosure of Confidential Information</u>. While employed by the Company and thereafter, I shall not, directly or indirectly, use any Confidential Information (as hereinafter defined) other than pursuant to my employment by and for the benefit of the Company, or disclose to anyone outside the Company any such Confidential Information. The term "Confidential Information" as used throughout this agreement shall mean all trade secrets, proprietary information and other data or information (and any tangible evidence, record or representation thereof), whether prepared, conceived or developed by an employee of the Company (including myself) or received by the Company by an outside source, which is in possession of the Company (whether or not the property of the Company), which in any way relates

to the present or future business of the Company, which is maintained in confidence by the Company, or which might permit the Company or its customers to obtain a competitive advantage over competitors who do not have access to such trade secrets, proprietary information, or other data or information.

Without limiting the generality of the foregoing, Confidential Information shall include:
- any idea, improvement, invention, innovation, development, technical data, design, formula, device, pattern, concept, method, process, computer program, software, firmware, source code, object code, algorithm, subroutine, object module, schematic, model, diagram, flow chart, chip masking specification, user manual, training or service manual, product specification, plan for a new or revised product, compilation of information, or work in process, and any and all revisions and improvements relating to any of the foregoing (in each case whether or not reduced to tangible form); and

- the name of any customer, vendor, consultant, employee, prospective customer or consultant, any sales plan, marketing material, plan or survey, business plan or opportunity, or product or development plan or specification, business proposal, financial record, or business record or other record or information relating to the present or proposed business of the Company.

Notwithstanding the foregoing, the term Confidential Information shall not apply to information which the Company has voluntarily disclosed to the public without restriction, or which has otherwise lawfully entered the public domain.

I understand that the Company from time to time may have in its possession information (including computer programs, market data, and product and development plans and specifications) which is claimed by others to be proprietary and which the Company has agreed to keep confidential. I agree that all such information shall be Confidential Information for purposes of this Agreement.

3. All Confidential Information and Developments the Property of the Company. I agree that all Confidential Information and all other discoveries, inventions, ideas, concepts, research and other information, processes, products, methods and improvements, or parts thereof (including without limitation all computer programs, algorithms, subroutines, source codes, object codes, designs, and improvements) conceived, developed, or otherwise made by me, alone or jointly with others, and in any way relating to the Company's present or proposed products, programs or services or to tasks assigned to me during the course of my employment, whether or not patentable or subject to copyright protection and whether or not reduced to tangible form or reduced to practice, during the period of my employment with the Company, or during the six-month period next succeeding the termination of my employment with the Company, whether or not made during my regular working hours, and whether or not made on the Company's premises, and whether or not disclosed by me to the Company (hereinafter referred to as "Developments"), together with all products or services which embody or emulate such Developments, shall be the sole property of the Company.

I agree that all originals and all copies of all manuscripts, artwork and drawings, prints, manuals, diagrams, letters, notes, notebooks, reports, models, computer disks, tapes and other data storage devices, and all other materials containing,

2

representing, evidencing, recording, or constituting any Confidential Information or Developments, however and whenever produced (whether by myself or others), shall be the sole property of the Company.

4. <u>Assignment of Developments</u>. I agree to, and hereby do, assign to the Company all my right, title and interest throughout the world in and to all Developments and to anything tangible, which evidences, incorporates, constitutes, represents or records any such Development. I agree that all such Developments shall constitute works made for hire under the copyright laws of the United States and hereby assign and, to the extent any such assignment cannot be made at present, I hereby agree to assign to the Company all copyrights, patents and other proprietary rights I may have in any such Development, together with the right to file for and/or own wholly without restriction United States and foreign patents, trademarks, and copyrights.

5. <u>No Inconsistent Obligations</u>. I hereby certify to the Company that I have no obligations to any previous employers or to any other party which require me not to disclose any information to the Company and that I have no other obligation or interest which is inconsistent or in conflict with this Agreement, or which would prevent, limit or impair in any way my performance of my obligations hereunder or my duties in connection with my employment by the Company, except as set forth in Exhibit A, attached hereto and incorporated by reference herein.

6. <u>Exceptions to this Agreement</u>. I hereby certify that Exhibit B, attached hereto and incorporated by reference herein, contains a complete listing and description of any and all Confidential Information or Developments which I developed prior to the date of this Agreement and claim as my own, or otherwise intend to exclude from this Agreement. I understand that after execution of this Agreement I shall have no right to exclude any Confidential Information or Development from this Agreement not presented on Exhibit B.

7. <u>Employee's Obligation to Cooperate</u>. I will, at any time during my employment, or after it terminates, on request of the Company, execute any and all documents and perform any and all lawful acts, which the Company considers necessary or advisable to secure its rights hereunder and to carry out this Agreement. It is understood that reasonable out-of-pocket expenses of my assistance incurred at the request of the Company will be reimbursed by the Company.

8. <u>Return of Property</u>. If I cease to be employed by the Company, or at any other time upon request of the Company, I shall return promptly any computer programs, artwork, specifications, drawings, blueprints, computer disks or other data storage devices, reproductions, sketches, notes, notebooks, reports, proposal, business plans or copies of them, other documents or materials, tools, equipment, keys, credit cards, or other property belonging to the Company or its customers.

If requested to do so by the Company, at the time of termination of my employment with the Company, I agree to sign a Termination Certificate in which I confirm that I have complied with the requirements of the preceding paragraph and that I am aware that certain restrictions imposed upon me by this Agreement continue after termination of my employment. I understand, however, that the Company and my rights and obligations under this Agreement, will continue even if I do not sign a Termination Certificate.

9. <u>Miscellaneous Provisions</u>. This Agreement contains the entire and only agreement between me and the Company respecting the subject matter hereof, and no modification, renewal, extension, waiver or termination of this Agreement or any of the provisions herein contained shall be binding upon me or the Company unless made in writing and signed by an authorized officer of the Company. In the event of any inconsistency between this Agreement and any other contract between me and the Company, the provisions of this Agreement shall prevail.

10. <u>Employment Status and Termination of Employment</u>. The Company hereby employs me and I hereby accept employment on the terms and conditions set forth herein. I understand that I am employed for an indefinite term and that either I or the Company may terminate the employment relationship at any time, with or without cause and with or without prior notice. I understand that if I choose to terminate my employment without prior notice I may forfeit certain benefits to which I would otherwise be entitled.

My obligations under this Agreement shall survive the termination of my employment with the Company regardless of the manner of or reasons for such termination, and regardless of whether such termination constitutes a breach of any other agreement I may have with the Company. My obligations under this Agreement shall be binding upon my heirs, executors and administrators, and the provisions of the Agreement shall inure to the benefit of and be binding on the successors and assigns of the Company.

If the scope of any provision contained herein is too broad to permit enforcement of such provision to its full extent, then such provision shall be enforced to the maximum extent permitted by law, and I hereby consent and agree that such scope may be judicially modified in any proceeding brought with respect to the enforcement of such provision. Except as otherwise provided in the previous sentence, if any provision of this Agreement shall be construed to be illegal or invalid, the legality or validity of any provision hereof shall not be affected thereby, and any illegal or invalid provision of this Agreement shall be severable, and all other provisions shall remain in full force and effect.

I recognize that money damages alone would not adequately compensate the Company in the event of breach by me of this Agreement, and I therefore agree that, in addition to all other remedies available to the Company at law or in equity, the Company shall be entitled to injunctive relief for the enforcement hereof. Failure by the Company to insist upon strict compliance with any of the terms, covenants, or conditions hereof shall not be deemed a waiver of such terms, covenants or conditions.

This Agreement shall be governed and construed according to the laws of the Commonwealth of Massachusetts, without regard to the conflict of law principles thereof.

This Agreement is executed under seal on this ___9th___ day of ___September___, 20_08_, to be effective as of the first day of my employment by the Company.

KEURIG, INCORPORATED                                EMPLOYEE

*[signature]*                                       *[signature: Ronald M DiValio]*

4

## Exhibit A

Conflicting Obligations

# Exhibit B

Prior Confidential Information or Developments