# EXHIBIT C

# KEURIG
## GREEN MOUNTAIN

33 Coffee Lane
Waterbury, VT 05676
T + 800 432 4627
KeurigGreenMountain.com

December 12, 2016

<u>By FedEx and Email</u>

Ronald DiFabio
48 Groveland Ave.
Weymouth, MA 02190
difabio1129@gmail.com

Dear Ron:

Thank you for reaching out to Julie Kurchak to inform her that you intend to commence employment at SharkNinja in 2017 as its Senior Vice President, Sales. We appreciate that you are cognizant of your confidentiality, non-competition and non-solicitation obligations to Keurig Green Mountain, Inc. ("Keurig"). I write this letter to ensure that we are aligned with respect to the specifics of such obligations as they relate to your potential new employment with SharkNinja.

Enclosed is a copy of the Confidentiality Agreement you signed upon the commencement of your employment with Keurig. Although your employment with Keurig ended on March 26, 2016, many of the obligations in the Confidentiality Agreement survive the termination of your employment. For example, you agreed that, other than pursuant to your employment with and for the benefit of Keurig, you would never use or disclose Keurig's Confidential Information. "Confidential Information" includes Keurig's trade secrets, proprietary information, and other confidential information concerning Keurig's designs, formulas, product specifications, sales plans, marketing plans, and business plans. During the course of your employment at Keurig, you had access to Keurig's Confidential Information, including documents and data concerning the design, development, pricing, promotional activities and sale of its actual and planned products and services, as well as research and analysis of Keurig's competitors.

Although the Confidentiality Agreement contains additional post-employment non-competition and non-solicitation restrictive covenants, subsequent to your execution of the Confidentiality Agreement you executed several equity and cash award agreements that also contain restrictive covenants. The most recent equity award agreement you signed is the December 1, 2015 Restricted Stock Unit Award Agreement (the "2015 RSU Agreement"), a copy of which is enclosed with this letter. Pursuant to the 2015 RSU Agreement, in exchange for granting you 1,866 restricted stock units ("RSUs"), you agreed to certain post-employment restrictive covenants.

Specifically, in Section 10.1 you agreed that you would not, without the express written permission of Keurig's General Counsel:

*RDD*
12/13/16

1


"(a)     work for, be employed or engaged by, or in any manner contribute [your] knowledge or services to, directly or indirectly, in whole or in part, as an employee, officer, owner, manager, advisor, consultant, agent, partner, director, shareholder, volunteer, intern or in any other similar capacity any entity engaged in the same or similar business as the Company and its Affiliates during [your] Employment and for a period of twelve (12) months following the termination of [your] Employment (howsoever caused);

(b)     directly or indirectly solicit, hire, recruit, attempt to solicit, hire or recruit, or otherwise induce the termination of Employment of any employee of the Company or its Affiliates or assist any other person or entity to do any of the foregoing, during [your] Employment and for a period of twelve (12) months following the termination of [your] employment (howsoever caused); or

(c)     directly or indirectly, solicit, contact (including, but not limited to, by e-mail, regular mail, express mail, telephone, fax, or instant message), attempt to contact or meet with any of the then current customers of the Company or any of its Affiliates for purposes of offering, accepting or delivering any goods or services similar to or competitive with those currently offered by the Company or any of its Affiliates, during [your] Employment and for a period of twelve (12) months following the termination of [your] Employment (howsoever caused)."

These restrictive covenants were also contained in other equity and cash award agreements going back to 2013, including nonqualified stock option award agreements, a deferred cash award agreement, a performance stock unit award agreement, and other restricted stock unit award agreements. As a result of the Keurig sale transaction that closed in March 2016, you received approximately $171,672.00 (gross) for the 1,866 RSUs granted to you in the 2015 RSU Agreement. In total, you received approximately $1,064,617 (gross) from the sale transaction as it relates to equity/cash award agreements that contain the restrictive covenants identified above.

As you know, SharkNinja is a competitor of Keurig. As such, Keurig has a strong basis for enforcing the terms of the Confidentiality Agreement and the 2015 RSU Agreement in order to protect Keurig's Confidential Information and other legitimate business interests. Full enforcement of the restrictions set forth in the 2015 RSU Agreement (or any other equity or cash award agreements going back to 2013) would result in an injunction enjoining you from joining SharkNinja in any capacity (or providing any services to SharkNinja, informally or otherwise) until at least March 27, 2017.

Keurig is willing to forego full enforcement of these restrictive covenants if you sign and return this letter by **December 13, 2016,** thereby providing Keurig the following written assurances:

1.  You have returned to Keurig all Keurig property in your possession, custody or control, including any Confidential Information;



12/13/16

2



33 Coffee Lane
Waterbury, VT 05676
T + 800 432 4627
KeurigGreenMountain.com

2. You will not disclose any of Keurig's Confidential Information to anyone at, affiliated with or working for SharkNinja, or to any other person or entity;

3. As of the date you sign and return this letter, you have not provided any services to SharkNinja, in any capacity, formal or otherwise, including as an informal consultant, advisor or volunteer to anyone at SharkNinja;

4. You will not commence employment with, or provide any services to, SharkNinja (or anyone affiliated with SharkNinja), in any capacity, formal or otherwise, including as an informal consultant, advisor or volunteer to anyone at SharkNinja, until on or after January 1, 2017;

5. You will not, at any time, including without limitation during your employment with SharkNinja, use Keurig's Confidential Information for any purpose, and you will recuse yourself from any situation at SharkNinja, or at any subsequent employer, in which you have been asked or encouraged to use or disclose Keurig's Confidential Information;

6. Until no earlier than March 27, 2017, your job duties at SharkNinja will not include any direct connection or involvement with (including participation in any meetings/calls and/or reviewing sales data or other information concerning any SharkNinja products that compete with any products offered or to be offered by Keurig), or development, marketing or sale of, any SharkNinja products that compete with any products offered or to be offered by Keurig, including without limitation products that would compete with Keurig's brewing systems, beverages or pods (such as the Ninja Coffee Bar™ brewer and/or any single serve coffee brewer/pod offered or to be offered by SharkNinja);

7. You will not attend (or participate remotely in) the International Home + Housewares Show 2017, to be held March 18-21, 2017 in Chicago;

8. You have not provided to SharkNinja, or anyone working for SharkNinja, the names of any Keurig employees for the purpose of SharkNinja soliciting such employees for employment at SharkNinja;

9. Until no earlier than March 27, 2017, you will not, directly or indirectly solicit, hire, recruit, attempt to solicit, hire or recruit, or otherwise induce the termination of employment of any employee of Keurig or its affiliates or assist any other person or entity to do any of the foregoing; and

10. Until no earlier than March 27, 2017, you will not, directly or indirectly, solicit, contact (including, but not limited to, by e-mail, professional/social media status updates (automatic or otherwise), regular mail, express mail, telephone, fax, or instant message), attempt to contact or meet with any of the customers of Keurig or any of its affiliates for purposes of offering, accepting or delivering any goods or services similar to or competitive with those currently offered by Keurig or any of its affiliates.

RLD 12/13/16

3

**KEURIG**
**GREEN MOUNTAIN**

33 Coffee Lane
Waterbury, VT 05676
T + 800 432 4627
KeurigGreenMountain.com

Please understand that even with these assurances, Keurig will continue to monitor your and SharkNinja's activities in the marketplace, and will take action should it learn that you are violating any of your obligations to Keurig.

To ensure that SharkNinja is fully aware of these issues, I am sending a similar letter to SharkNinja's legal counsel, and will seek similar written assurances from SharkNinja.

Please call me, or have your lawyer contact me, should you have any questions.

Sincerely,

Jeffrey Burns
Counsel – Employment
Keurig Green Mountain, Inc.
(781) 418-3214
jeffrey.burns@keurig.com

Agreed and Accepted:

Ronald DiFabio

Date: 12/13/16

4