# EXHIBIT D



**KEURIG GREEN MOUNTAIN**

33 Coffee Lane
Waterbury, VT 05676
T + 800 432 4627
KeurigGreenMountain.com


December 12, 2016

<u>By Federal Express</u>

Mr. Jon Broz, Esq.
Senior Vice President, General Counsel & Secretary
SharkNinja Operating LLC
180 Wells Ave, Newton, MA 02459

Dear Mr. Broz:

Ron DiFabio, Keurig Green Mountain, Inc.'s ("Keurig") former Senior Vice President, US Sales, recently informed Keurig that he intends to commence employment with SharkNinja Operating LLC ("SharkNinja") as its Senior Vice President, Sales. While we appreciate that Mr. DiFabio reached out to Keurig and has acknowledged that he has certain confidentiality, non-competition and non-solicitation obligations to Keurig, and that he has discussed these obligations with SharkNinja, we feel it is important to reach out to you to confirm that SharkNinja is aware of the specifics of Mr. DiFabio's obligations and Keurig's expectations.

A copy of Mr. DiFabio's Confidentiality Agreement is enclosed with this letter. The Confidentiality Agreement serves to protect Keurig's legitimate business interests, including without limitation its Confidential Information, trade secrets and good will. Many of the obligations in the Confidentiality Agreement survive the termination of Mr. DiFabio's employment.

During his employment with Keurig, Mr. DiFabio had access to and used Keurig's Confidential Information, including without limitation Keurig's confidential marketing and business plans, new product development, packaging, pricing, sale information, promotional plans, research and analysis concerning competitors, and confidential presentations to Keurig's customers. He agreed to maintain the confidentiality of this information.

In addition to the Confidentiality Agreement, Mr. DiFabio subsequently executed several equity and cash award agreements that also contain restrictive covenants. The most recent equity award agreement signed by Mr. DiFabio is the December 1, 2015 Restricted Stock Unit Award Agreement (the "2015 RSU Agreement"), a copy of which is enclosed with this letter. Pursuant to the 2015 RSU Agreement, in exchange for granting Mr. DiFabio 1,866 restricted stock units ("RSUs"), Mr. DiFabio agreed to certain post-employment restrictive covenants.

Specifically, in Section 10.1 Mr. DiFabio agreed that he would not, without the express written permission of Keurig's General Counsel:



33 Coffee Lane
Waterbury, VT 05676
T + 800 432 4627
KeurigGreenMountain.com

"(a) work for, be employed or engaged by, or in any manner contribute [his] knowledge or services to, directly or indirectly, in whole or in part, as an employee, officer, owner, manager, advisor, consultant, agent, partner, director, shareholder, volunteer, intern or in any other similar capacity any entity engaged in the same or similar business as the Company and its Affiliates during [his] Employment and for a period of twelve (12) months following the termination of [his] Employment (howsoever caused);

(b) directly or indirectly solicit, hire, recruit, attempt to solicit, hire or recruit, or otherwise induce the termination of Employment of any employee of the Company or its Affiliates or assist any other person or entity to do any of the foregoing, during [his] Employment and for a period of twelve (12) months following the termination of [his] employment (howsoever caused); or

(c) directly or indirectly, solicit, contact (including, but not limited to, by e-mail, regular mail, express mail, telephone, fax, or instant message), attempt to contact or meet with any of the then current customers of the Company or any of its Affiliates for purposes of offering, accepting or delivering any goods or services similar to or competitive with those currently offered by the Company or any of its Affiliates, during [his] Employment and for a period of twelve (12) months following the termination of [his] Employment (howsoever caused)."

These restrictive covenants were also contained in other equity and cash award agreements going back to 2013, including nonqualified stock option award agreements, a deferred cash award agreement, a performance stock unit award agreement, and other RSU award agreements. As a result of the Keurig sale transaction that closed in March 2016, Mr. DiFabio received significant payments as related to the equity/cash award agreements that contain these restrictive covenants.

As you know, SharkNinja is a competitor of Keurig. As such, Keurig has a strong basis for enforcing the terms of the Confidentiality Agreement and the 2015 RSU Agreement in order to protect Keurig's Confidential Information and other legitimate business interests. Full enforcement of the restrictions set forth in the 2015 RSU Agreement (or any other equity or cash award agreements going back to 2013) would result in an injunction enjoining Mr. DiFabio from joining SharkNinja in any capacity (or providing any services to SharkNinja, formally or otherwise) until at least March 27, 2017.

Keurig is willing to forego full enforcement of the restrictive covenants set forth in the 2015 RSU Agreement provided that SharkNinja executes and returns this letter by **December 13, 2016** (and Mr. DiFabio executes and returns a similar letter, handled under separate cover), thereby providing Keurig the following written assurances:

1. SharkNinja is aware of Mr. DiFabio's ongoing obligations as set forth in the Confidentiality Agreement and the 2015 RSU Agreement;



33 Coffee Lane
Waterbury, VT 05676
T +800 432 4627
KeurigGreenMountain.com

2. As of the date that SharkNinja executes this letter, Mr. DiFabio has not provided any services to SharkNinja, in any capacity, formal or otherwise, including as an informal consultant, advisor or volunteer to anyone at SharkNinja;

3. Mr. DiFabio will not commence employment with, or provide any services to, SharkNinja (or anyone affiliated with SharkNinja), in any capacity, formal or otherwise, including as an informal consultant, advisor or volunteer to anyone at SharkNinja, until on or after January 1, 2017;

4. SharkNinja has not induced, encouraged or permitted Mr. DiFabio, and will not induce, encourage or permit Mr. DiFabio, to engage in any activity during the course of his employment with SharkNinja, directly or indirectly, that would violate Mr. DiFabio's obligation to maintain the confidentiality of Keurig's Confidential Information;

5. Until no earlier than March 27, 2017, Mr. DiFabio's job duties at SharkNinja will not include any direct connection or involvement with (including participation in any meetings/calls and/or reviewing sales data or other information concerning any SharkNinja products that compete with any products offered or to be offered by Keurig), or development, marketing or sale of, any SharkNinja products that compete with any products offered or to be offered by Keurig, including without limitation products that would compete with Keurig's brewing systems, beverages or pods (such as the Ninja Coffee Bar™ brewer and/or any single serve coffee brewer/pod offered or to be offered by SharkNinja);

6. Mr. DiFabio will not attend (or participate remotely in) the International Home + Housewares Show 2017, to be held March 18-21, 2017 in Chicago; and

7. SharkNinja has not hired Mr. DiFabio with the intention of inducing or permitting him to violate the employee and customer non-solicitation provisions set forth in the 2015 RSU Agreement, and until no earlier than March 27, 2017, SharkNinja will not encourage, induce or permit Mr. DiFabio to (i) directly or indirectly solicit, hire, recruit, attempt to solicit, hire or recruit, or otherwise induce the termination of employment of any employee of Keurig or its affiliates or assist any other person or entity to do any of the foregoing, or (ii) directly or indirectly, solicit, contact (including, but not limited to, by e-mail, professional/social media status updates (automatic or otherwise), regular mail, express mail, telephone, fax, or instant message), attempt to contact or meet with any of the customers of Keurig or any of its affiliates for purposes of offering, accepting or delivering any goods or services similar to or competitive with those currently offered by Keurig or any of its affiliates.

Please understand that even with these assurances, Keurig will continue monitoring SharkNinja's and Mr. DiFabio's activities in the marketplace carefully for evidence that Mr. DiFabio is in breach of any of his obligations to Keurig. If Keurig finds such evidence, it is prepared to immediately initiate appropriate legal action to enjoin the misappropriation of Keurig's Confidential Information, to enforce its rights and to



33 Coffee Lane
Waterbury, VT 05676
T + 800 432 4627
KeurigGreenMountain.com

recover monetary damages from all parties.

It is Keurig's hope and desire that, upon considering Mr. DiFabio's previous executive role at Keurig, his knowledge of Keurig's Confidential Information, and his contractual, statutory and common law obligations owed to Keurig, SharkNinja will provide the appropriate and reasonable assurances requested herein.

This letter is sent without prejudice to Keurig's right to seek any and all available remedies against SharkNinja and/or Mr. DiFabio should there be a breach of any obligations owed to Keurig.

Sincerely,

Jeffrey Burns
Counsel - Employment
Keurig Green Mountain, Inc.
(781)418-3214
jeffrey.burns@keurig.com

Accepted and Agreed:
SHARKNINJA

By: _____
Signature

JAMES DAILY
Print Name

SENIOR COUNSEL
Title

13 DECEMBER 2016
Date